## WILLIAM B. TROTTER *v.* HUGH McCALL.

In an action brought by A. against B. to recover damages for the detention of a slave hired by A. from B., it is competent for B. to show that by the cruel and unjustifiable treatment of A., a permanent injury was done to the slave, diminishing the value, for the purpose of reducing the damages claimed, or preventing a recovery of any thing.

Where a party hires a slave, he comes under an implied obligation to treat the slave with such care and moderation, as an ordinarily prudent master would use towards his own slave.

The violation of the contract of hiring on the part of the hirer, would justify the master in treating the contract as at an end.

In pursuing this course, the master must take the hazard of proving the circumstances were such as to justify him in putting an end to the contract, such as ill treatment impairing the value of the slave, great abuse, or cruel punishment.

On appeal from the circuit court of Clarke county; Hon. John Watts, judge.

Trotter *v.* McCall.

This was a suit instituted by Hugh McCall, to recover dam-ages from W. F. Trotter, for the detention of a slave hired by McCall, for the year 1850, from Trotter, as agent for his sister. McCall agreed to give $75 for the hire of the slave, and before her time was out, she ran away, and went to Trotter. It was in proof, that McCall had whipped the slave in a very cruel manner; and when McCall came to Trotter, to claim the slave, that Trotter offered to restore her, if the plaintiff would agree to treat her better by not whipping her again, or, if necessary, to do so in a moderate manner, she being in a delicate situation incident to females, she having been injured by the whipping received; but McCall refused to do so, and threatened to give her a hundred lashes upon her return. Trotter refused to de-liver the slave to McCall. It was also in proof, that the deten-tion of the slave was a material injury to McCall in the culti-vation of his crop that year.

The jury found a verdict for the plaintiff for $100, and defendant Trotter moved the court for a new trial, which was refused by the court below, and he prayed an appeal to this court.

*George L. Potter* for appellant.

In cases of bailment for hire, there is an implied contract by the bailee, " not only to use the thing with due care and mod-eration, but also not to apply it to any other use than that for which it was hired;" "to use it well; to take care of it." Story, Bailm. § 413; Ib. 397.

The conduct of plaintiff was without excuse. He violated his contract of hire. What was the plain duty of defendant, as a man and as agent of his sister? To protect the slave from such gross abuse.

Judge Story expressed the opinion, that if the bailee misuses, abuses, or injures the thing hired, the bailor may consider the bailment at an end, and peaceably take possession of his prop-erty. Story, Bailm. § 396. This seems consonant with justice and with the law. *Homer* v. *Thwing*, 3 Pick. 494.

This court has held, that where one party is in default, the other may elect to consider the contract at an end. *Ketchum*

v. *Evertson,* 13 J. R. 363; *Hill* v. *Green,* 4 Pick. 113; *Thorn* v. *Turnpike Company,* 3 Penn. 446.

If, when the slave returned to Trotter, it was his duty to detain her, for the purpose of restoring her to plaintiff, it was no less his duty to retain her when threatened with further abuse. The owner is bound to protect his slave, and see that it is treated with humanity. Suppose McCall had threatened to kill the slave, must Trotter, notwithstanding, deliver her up? Clearly not.

*William B. Trotter* on the same side.

*A. B. Dawson,* for appellee,

Contended the law, as charged by the court below, was correct, and there was no error in the case.

Mr. Justice HANDY delivered the opinion of the court.

This was an action brought by the appellee against the appellant, to recover damages for the detention of a slave hired by the appellee from the appellant, for the year 1850.

It appears by the record, that in the month of May of that year, the slave threatened to run away from the appellee, for which he whipped her, and she afterwards ran away, and went to the appellant for protection; who refused to deliver her to the appellee, for the reason that the appellee had whipped her in a cruel and unusual manner, and threatened to whip her again when he got her into his possession. It was proved that the detention of the slave was a material injury to the appellee in the cultivation of his crop; and there was also testimony tending to prove that the whipping was a serious injury to the slave, who was then in a delicate condition peculiar to females, and that a repetition of the punishment would have been dangerous. In this state of the case, the appellant offered a witness to prove, in mitigation of damages, that the value of the slave had been materially injured by the cruel and unusual treatment of her by the appellee, which was objected to, and the objection sustained; and this constitutes the error here complained of.

It is not easy to perceive upon what ground this testimony was refused; for the court granted an instruction at the instance of the defendant, to which it was directly applicable. The action was for damages sustained by the improper detention of the slave. If it could be shown, that by the cruel and unjustifiable treatment of the plaintiff, a permanent injury was done to the slave, diminishing her value, it was proper to be submitted to the jury for their consideration, and the defendant was entitled to the benefit of it, if proved to the satisfaction of the jury, either in diminution of the plaintiff's damages, or as preventing his recovering any thing, as the jury might think proper from all the evidence.

When a party hires a slave, he comes under an implied obligation to treat the slave with such care and moderation as an ordinarily prudent master would use towards his own slave. Jones on Bailm. 88; Story on Bailm. § 413. Should this obligation be violated by the hirer, and the slave be driven, by his cruel treatment, to seek the protection of the master, and come to his possession peaceably and without his procurement, the master would be justifiable in refusing to surrender the slave to the hirer, if the slave had been already materially injured in value by the abuse and cruelty of the hirer, and there was just ground for believing that if given up, the same course of treatment would be continued to him. The violation of the contract of hiring on the part of the hirer, would justify the master in treating the contract as at an end. Story on Bailm. § 396.

But in taking this course, the master must take the hazard of proving, to the satisfaction of the jury, that the circumstances were such as to justify him in putting an end to the contract, such as ill treatment impairing the value of the slave, great abuse, or cruel punishment. The burden of this proof rests, of course, upon the party alleging this state of facts; for, subject to the express and implied obligations of the contract of hiring, the hirer becomes the owner of the slave during the term of hire.

The judgment is reversed, and the case remanded for a new trial.